

May 30, 2025

**VIA ECF**
Lyle W. Cayce
Clerk of Court
United States Court of Appeals, Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

　　Re: *Charles v. Westcott*, No. 24-30484 (5th Cir.)

Dear Mr. Cayce:

We respectfully submit this letter in response to the letter addressed to you and filed into the record by Appellants on May 28, 2025.

1. Appellants' May 28 letter requests no relief from this Court and appears to be an improper attempt to influence the Court in advance of a promised later motion. The Court should disregard it. No rule of appellate procedure invites parties to pollute the record with superfluous argumentation. If Defendants want a stay, they must move for it when the appropriate time arrives.

2. The deadline about which Appellants complain is a deadline for the parties to submit proposed scheduling orders to "address briefing deadlines for any pending motions and set forth a plan for proceeding under the Court's remedial order." Dist. Ct. Dkt. 826 at 2. The district court will presumably

*Voice 504-522-2337 • Fax 504-522-5507 • Toll Free 1-800-960-7705*
*www.disabilityrightsla.org • 8325 Oak Street • New Orleans, Louisiana 70118-2043*
**The Protection and Advocacy System for Louisiana**

consider the parties' submissions before entering a further order or directing any relief. Thus, Appellants' suggestion that the district court "is on the cusp of initiating remedial proceedings" is inaccurate.

3. In *Parker v. Hooper*, No. 23-30825, a three-judge panel of this Court held that a Remedial Order setting out similar procedures in anticipation of permanent injunctive relief *was not a final order subject to this Court's appellate jurisdiction. See Parker*, Dkt. 182-1 at 5-6. This Court has stayed further proceedings in this case pending a decision in *Parker*, which is currently pending *en banc* review. Though the panel opinion in *Parker* was vacated when this Court granted en banc rehearing, if the en banc court upholds the decision of the *Parker* three-judge panel, then it seems likely that the Court would conclude that Appellants' appeal here is not ripe and there is no grounds for a stay at this time.

4. Alternatively, if this Court has jurisdiction to review the district court's Remedial Order, it does not follow that the Court maintains jurisdiction to review the district court's order to the parties to submit proposed scheduling orders. Scheduling orders are firmly committed to district courts' discretion and obviously are not reviewable final orders.

5. When determining whether a stay is appropriate, this Court asks "(1) whether the stay applicant has made a strong showing that he is likely to

succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

6. Appellants have not, and cannot, make a strong showing that they are likely to succeed on the merits. Appellants further fail to provide any support or authority to request this Court to stay submission of a proposed scheduling order.

7. Plaintiffs prevailed in *two* bench trials at the district court level, at which the district court found that conditions of confinement at DWCC were not only unconstitutional, but *torturous*. Op., Dist. Ct. Dkt. 754 at 66. As one example of the egregious facts heard by the district court, the evidence at both the liability and remedial trials demonstrated that DWCC continued to subject inmates to "strip cell" status, without any disciplinary process or review by mental health staff, in which inmates – including inmates who had been diagnosed with mental illness – were, for *indefinite periods of time*, "subjected to solitary confinement with nothing but a paper gown and no possessions in his cell," including, sometimes, removal of even mattresses and bedding. *Id.* at 59-63. By depriving inmates of basic dignities and any form of mental stimulation, DWCC's "strip cell" policy drives inmates to

dissociative mental breaks, with symptoms including incoherence, hallucinations, self-injury, and suicidal behavior. *Id.* at 65.

8. Even if submitting a proposed scheduling order could be considered "irreparable harm" to Appellants, which it certainly may not, that harm pales in comparison to the continuation of the appalling conditions at DWCC that constituted physical and mental torture of inmates in Appellants' custody. And of course, the citizens of Louisiana and the United States have an overwhelming public interest in preventing and remediating torture carried out in their name.

Respectfully submitted,

/s/ Melanie A. Bray

| | |
|---|---|
| Melanie A. Bray, La. Bar No. 37049 | Robert W. Cobbs, |
| J. Dalton Courson, La. Bar No. 28542 | DC Bar No. 1045579 |
| Disability Rights Louisiana | Cohen Milstein Sellers & Toll |
| 8325 Oak Street, New Orleans, LA 70118 | 1100 New York Ave. NW |
| 504-208-4151; 504-272-2531 (fax) | Washington, DC 20005 |
| mbray@disabilityrightsla.org | 202-408-4600 |
| dcourson@disabilityrightsla.org | rcobbs@cohenmilstein.com |

cc:　　All Counsel (via ECF)